**VIRGINIA:**

In the Supreme Court of Virginia held at the Supreme Court Building in the City of Richmond, on Thursday, the 12th day of September, 2013.

Present: Kinser, C.J., Lemons, Goodwyn, Millette, McClanahan and Powell, JJ., and Lacy, S.J.

Alfredo R. Prieto,                                    Petitioner,

against          Record No. 122054

Warden of the Sussex I State Prison,          Respondent.


Upon a Petition for a Writ of Habeas Corpus

Upon consideration of the petition for a writ of habeas corpus filed November 30, 2012, and the respondent's motion to dismiss, the Court is of the opinion that the motion should be granted and the writ should not issue.

Alfredo R. Prieto was convicted in the Circuit Court of Fairfax County in 2008 of capital murder in the commission of, or subsequent to, rape, Code § 18.2-31(5); capital murder of more than one person as part of the same act or transaction, Code § 18.2-31(7); rape, Code § 18.2-61; two counts of use of a firearm in the commission of murder, Code § 18.2-53.1; and grand larceny, Code § 18.2-95, and was sentenced to death for each of the capital murder convictions and twenty years' imprisonment for the remaining convictions. The victims of these 1988 crimes

were Rachel Raver and Warren Fulton III.  This Court affirmed Prieto's convictions, but found the verdict forms defective and remanded for resentencing.  Prieto v. Commonwealth, 278 Va. 366, 418, 682 S.E.2d 910, 938 (2009). On remand in 2010, after finding the aggravating factors of vileness and future dangerousness, the jury fixed Prieto's sentence for each of the capital murder convictions at death.  The trial court sentenced Prieto in accordance with the jury's verdicts.  This Court upheld Prieto's sentences of death in Prieto v. Commonwealth, 283 Va. 149, 189, 721 S.E.2d 484, 508 (2012), cert. denied, ___ U.S. ___, 133 S.Ct. 244 (2012).

CLAIM (I)

In a portion of claim (I), Prieto argues he was denied the effective assistance of counsel during the guilt phase of the 2008 trial because counsel failed to thoroughly investigate and review the analysis of the DNA found in Raver's vagina.  Prieto alleges the analysis showed the presence of DNA not linked to either Prieto or Raver. Testing conducted on three occasions in 2000 by Carol Palmer, a forensic scientist of the Virginia Department of Forensic Science, showed a "12" allele at the vWA locus of the non-sperm fraction from the vaginal swabs taken from Raver.  Neither Raver nor Prieto have a "12" allele at that

2

locus.  Prieto argues the presence of the "12" allele shows another perpetrator also sexually assaulted Raver.  Prieto contends counsel was deficient for failing to notice the "12" allele and to argue at trial that it showed the presence of another perpetrator.

Prieto further argues counsel failed to have Dr. J. Thomas McClintock, a DNA expert appointed to assist Prieto, review this information to determine if it supported the presence of a second perpetrator.  In support, Prieto provides Dr. McClintock's affidavit, stating he was never asked to look at the documentation pertaining to the non-sperm fraction of the vaginal swab and that had he known of the presence of the "12" allele he would have testified that it represented a foreign allele.  Prieto contends this evidence was the strongest evidence available in support of the defense theory that a second perpetrator committed the murders.  Prieto argues that had this evidence been presented, it would have "raise[d] reasonable doubt in jurors' minds about whether the evidence proved that Prieto acted alone or was an immediate perpetrator of the murders" and would have likely "required a jury to acquit Prieto of capital murder."

The Court holds that this portion of claim (I) satisfies neither the "performance" nor the "prejudice"

prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984).  The record, including the affidavit of Carol Palmer, demonstrates that Palmer observed the "12" allele at the vWA locus but determined it was an artifact, which is the byproduct of the DNA typing process resulting from the required amplification of samples.  Palmer observed the same "12" allele artifact in an analysis of Raver's blood sample. The determination of the "12" allele as an artifact was confirmed when (1) the non-sperm fraction of the vaginal swab and Raver's blood were analyzed by a second analyst and the results from Palmer's and the second analyst's testing were reviewed by a third scientist, and (2) when the samples were independently tested, re-tested, and those results reviewed at another Division of Forensic Science laboratory.  This data, all of which was collected prior to the guilt phase of trial, supported Palmer's determination that the "12" allele was an artifact, not a real allele, as well as her conclusion that a third DNA donor was not present.

The affidavit of Dr. McClintock does not address the testing done at the second laboratory or how those results would have affected his opinion.  Moreover, this Court has already extensively reviewed the evidence presented at

4

trial and determined that the evidence was overwhelming that Prieto was the sole perpetrator of the murders. Prieto, 278 Va. at 398-01, 682 S.E.2d at 927-29. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (I), Prieto argues he was denied the effective assistance of counsel during the guilt phase of the trial because counsel failed to have the anal swabs taken from Raver further analyzed. Prieto cites to a 1988 certificate of analysis which notes the presence of spermatozoa in the extracts of the anal swabs and a 1994 note from the Department of Forensic Science that indicates both the vaginal and anal swabs contained a "male fraction." The anal swab was never further tested. Prieto contends such testing reasonably could have uncovered additional evidence of a second perpetrator.

The Court holds that this portion of claim (I) fails to satisfy the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript and Palmer's affidavit, demonstrates that the anal swabs, which contained a trace amount of spermatozoa, were tested twice. In 1989, the swabs were tested by an

5

outside laboratory, LifeCodes. This analysis showed the presence of only Raver's DNA. The swabs were tested again in 1994 by another scientist at the Division of Forensic Science, George Li. Li's testing showed "[n]o conclusive DNA profile was obtained from . . . the extract of the anal swab."

Subsequently, in 2000, Palmer inventoried the anal swabs and determined not to test them again because only a trace amount of spermatozoa had been present in the samples and most of the samples had been destroyed by the previous testing. Prieto fails to show that any testing could have been conducted on the amount of the anal swab sample that remained and he fails to proffer what the results of any testing would have shown. Thus, Prieto has failed to demonstrate that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (I), Prieto argues he was denied the effective assistance of counsel during the guilt phase of the trial because counsel failed to present evidence that the Negroid hairs recovered from combings of Raver's pubic area were lost after the Commonwealth had identified Prieto as the primary suspect and after the exculpatory nature of the hairs became apparent. Prieto further contends counsel erred by conceding at trial that

the police did not act in bad faith when the hairs were either lost or destroyed.  Prieto argues counsel's failure deprived Prieto of his "due process remedy," allowed the Commonwealth to unfairly undermine the probative value of the hairs, and diminished the efficacy of his theory of a second perpetrator.

The Court holds that this portion of claim (I) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The Court addressed the issue of the missing hairs in Prieto I.  The Court held that the Commonwealth could not have had knowledge of any exculpatory value in the hairs at the time they were lost because the hairs were lost before Prieto was a suspect.  Prieto, 278 Va. at 397, 682 S.E.2d at 926.  The last time that the hairs were seen was in 1989, when they were sealed inside an evidence envelope. Id.  They were not discovered to be missing until 2005, when Prieto became a suspect.  Id.  Thus, the hairs did not have "apparent exculpatory value" when they were lost.  Id.

Moreover, the record, including the trial transcript, demonstrates that the jury was presented with evidence that the hairs were discovered to be missing in 2005, after Prieto had been identified as a possible suspect.  Finally, Prieto presents no evidence to demonstrate that the

7

Commonwealth acted in bad faith. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

CLAIM (II)(A)

In claim (II)(A), Prieto contends he was denied the right to a jury "of the state and district" where the crimes were committed, in violation of the Sixth Amendment, because a juror who did not reside in Virginia was seated at his first trial. Prieto further alleges the seating of this juror violated Code § 8.01-337, which provides that individuals are "liable" to serve on a jury if they are citizens of the United States, are over the age of eighteen, and have been "residents of the Commonwealth one year, and of the county, city or town in which they reside six months next preceding their being summoned to serve." Prieto claims he learned of the juror's alleged disability more than four years after the trial. Prieto contends the seating of this juror is a structural error requiring automatic reversal because it exceeded both the trial court's authority and the limits of state sovereignty to reach across state lines to seat a juror from another state.

8

In support of this claim, Prieto relies on two affidavits from Juror 46, in which the juror avers that shortly before Prieto's trial he moved out of the Fairfax County townhouse that he owned, that he was renting the townhouse to another and living in the District of Columbia, and that he did not intend to move back to Virginia. Prieto concedes the juror list provided to trial counsel by the trial court showed a Fairfax County address for Juror 46. Prieto further concedes Juror 46, along with a panel of thirty-three other prospective jurors, was asked during voir dire if he had lived in Fairfax for the past six months and in the Commonwealth of Virginia for the past year and that the panel responded "yes."

The Court holds claim (II)(A) is without merit. "A 'structural error' is a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.'" Morrisette v. Warden of the Sussex I State Prison, 270 Va. 188, 192, 613 S.E.2d 551, 556 (2005) (citing Arizona v. Fulminante, 499 U.S. 279, 310 (1991)). Structural errors have been found in a very "limited class of cases," and include the denial of counsel, the denial of an impartial trial judge, and the systematic exclusion of members of the defendant's race from the grand jury. Johnson v. United States, 520 U.S.

9

461, 468-69 (1997).  Structural errors "necessarily render a trial fundamentally unfair," and thus are not susceptible to harmless error review.  Rose v. Clark, 478 U.S. 570, 577-78 (1986).  "[I]f [a] defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless-error analysis."  Id. at 579.

The seating of Juror 46 is not a structural error as it is not a "defect affecting the framework" of Prieto's trial.  Thus, it is governed by the ordinary rules controlling claims of juror disqualification.  After the jury has been sworn, such claims may only be brought "with leave of court" upon a showing the "disability be such as to probably cause injustice in a criminal case to the Commonwealth or to the accused."  Code § 8.01-352; see Mason v. Commonwealth, 255 Va. 505, 510, 498 S.E.2d 921, 923 (1998) (affirming trial court's denial of defendant's motion for a mistrial where the record failed to demonstrate the challenged juror had a disability which was "such as to probably cause injustice"); see also Kohl v. Lehlback, 160 U.S. 293, 302 (1895) (reviewing common law relating to juror disability and holding if a party fails to timely bring a challenge based on a claim that a juror is incompetent to serve for reasons such as alienage,

10

infancy, or nonresidency, whether "voluntarily, or through negligence, or want of knowledge" such claim is waived; such "defect is not fundamental as affecting the substantial rights of the accused[,] and the verdict is not void for want of power to render it").  Prieto has not articulated any prejudice or injustice stemming from the alleged lack of residency of Juror 46.

### CLAIM (II)(B)

In claim (II)(B), Prieto contends he was denied the effective assistance of counsel because counsel failed to learn Juror 46 was not a Virginia resident at the time of Prieto's 2010 trial.

The Court holds claim (II)(B) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland, 466 U.S. at 687.  As Prieto concedes, the record, including the manuscript record and the trial transcript, demonstrates that the juror list provided to trial counsel by the trial court showed an address for Juror 46 in Fairfax County.  Additionally, after specifically informing Juror 46 and thirty-three other prospective jurors that each question required a verbal response, the trial court questioned the jurors regarding their citizenship and residency and the jurors affirmed that they had each lived in Fairfax County for the

11

past six months and in the Commonwealth for the past year. Under the circumstances, it was entirely reasonable for counsel to accept that Juror 46 was a resident of Virginia and to decline to question him further. Moreover, Prieto fails to allege any prejudice resulting from counsel's failure to challenge Juror 46. Thus, Prieto has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

## CLAIM (III)

In claim (III), Prieto alleges he was denied the right to select and be sentenced by an impartial jury. Prieto contends that, at his 2010 trial, Juror 23 intentionally withheld information during voir dire regarding sexual assaults the juror had suffered. In support of this claim, Prieto relies on Juror 23's September 2012 affidavit, stating that Juror 23 was repeatedly molested as a child. Prieto alleges that Juror 23 withheld this information from the questionnaire that jurors filled out prior to voir dire, as well as during the course of voir dire questioning, to hide his bias against Prieto. Prieto contends the concealment of this information deprived him of a valid basis to remove Juror 23 for cause because he

12

was not afforded the opportunity to question Juror 23 about whether the sexual assaults impacted the juror's decision-making and ability to be impartial.

The Court holds that claim (III) is without merit. The record, including the questionnaire of Juror 23 and the trial transcript, does not demonstrate that Juror 23 either failed to honestly answer the questions asked of him, or that he was biased against Prieto. In the questionnaire, Juror 23 responded "no" when asked if he had ever been the victim of a crime, even if the crime was never reported. However, Juror 23 subsequently answered that he had been previously assaulted by three men in response to a question about whether he had ever appeared in court. During voir dire, a panel of prospective jurors that included Juror 23 was asked if any of them or individuals close to them had been the victim of serious criminal conduct. Even though another juror answered regarding the rape of a niece, Juror 23 still only addressed the previous assault in his response. Additionally, near the end of voir dire, Juror 23 did not respond when asked if he thought of anything new as a result of anything that had been asked during the course of voir dire.

Juror 23's responses do not show that he was intentionally withholding information or not honestly

13

answering the questions posed to him. Rather, they show that Juror 23 may not have realized from the questions posed the need to address the sexual molestation he suffered as a youth. Moreover, Prieto fails to show that Juror 23 was biased against him. Multiple times during voir dire, Juror 23 indicated he could remain impartial before making a decision as to Prieto's sentence. Thus, Prieto has failed to demonstrate that Juror 23 failed to answer honestly a material question during voir dire, and he has consequently failed to show he was denied the right to an impartial jury. See McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556 (1984).

## CLAIM (IV)

In a portion of claim (IV), Prieto contends he was denied the effective assistance of counsel because counsel failed to move to exclude Juror 23 for cause. Prieto alleges Juror 23 indicated during voir dire that he would not vote for a life sentence unless he heard from Prieto, either directly or indirectly, at sentencing.

The Court holds that this portion of claim (IV) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that Juror 23 expressed a desire either to hear directly from

14

Prieto or to be able to review any testimony Prieto may have given during the guilt phase of the trial as a way to help the jury determine the appropriate sentence Prieto should receive. However, when asked by counsel if he would be able to put aside his expectation of Prieto testifying and follow the court's instructions that Prieto's failure to testify could not be held against him, Juror 23 responded on two separate occasions that he could and would have no problem doing so. Based on the responses of Juror 23, counsel for Prieto could reasonably conclude they had no grounds to move to exclude Juror 23 for cause. Furthermore, given the responses of Juror 23, Prieto cannot establish a reasonable probability that the court would have granted a motion to strike the juror if counsel for Prieto had moved to strike Juror 23 for cause. Thus, Prieto has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (IV), Prieto argues he was denied the effective assistance of counsel because counsel failed to interview Juror 23 after the jury returned with a sentence of death. Prieto contends that, based on the voir dire responses of Juror 23, counsel should have known Juror

15

23 would hold Prieto's failure to testify against him and should have interviewed Juror 23 about this matter once the sentence was handed down. Continuing, Prieto asserts that if counsel had done so, they would have discovered juror misconduct that would have supported a motion for a mistrial.

Prieto cites to two portions of the affidavit of Juror 23 in support of this claim. First, Juror 23 admits he "really wanted" to hear from Prieto in some fashion at sentencing because Juror 23 believed Prieto "owed" the jury an explanation for his actions. Juror 23 states his belief that Prieto "should get up there and refute what [the Commonwealth is] saying about you" and that had such an explanation occurred he "could have voted for life." Second, Juror 23 states that while the court explained what a life sentence was, the explanation was vague and did not change his understanding that "life in prison was 50 years." Prieto alleges that, had counsel conducted a post-sentencing interview, these matters would have come to light and would have supported the granting of a mistrial as it would have showed that Juror 23 did not follow the court's instructions.

The Court holds that this portion of claim (IV) satisfies neither the "performance" nor the "prejudice"

16

prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that, while Juror 23 expressed a desire to hear either directly or indirectly from Prieto, he also, on two separate occasions, informed counsel and the court that he would follow the court's instructions and not hold Prieto's failure to testify against him. The record also reflects that the court instructed the jury that "[i]mprisonment for life means imprisonment for life without the possibility of parole."

Given the responses of Juror 23 and the precedent of this Court, which holds that a juror is presumed to follow the instructions given by the trial court, Muhammad v. Warden, 274 Va. 3, 18, 646 S.E.2d 182, 195 (2007) (citing Green v. Young, 264 Va. 604, 611, 571 S.E.2d 135, 139 (2002)), counsel could reasonably conclude they had no reason to interview Juror 23. Additionally, this Court has refused to impose such post-trial juror interviews upon trial counsel unless counsel knew or should have known of the alleged problem at the time of trial. See Lenz v. Warden, 267 Va. 318, 325-26, 593 S.E.2d 292, 296 (2004).

Furthermore, courts in Virginia "have adhered strictly to the general rule that the testimony of jurors should not be received to impeach their verdict" and that the best

17

evidence of a juror's opinion in a case is the unanimous verdict reached by the jury. Caterpillar Tractor Co. v. Hulvey, 233 Va. 77, 82, 353 S.E.2d 747, 751 (1987). Thus, Prieto has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

CLAIM (V)

In a portion of claim (V), Prieto alleges he was denied the effective assistance of counsel because counsel failed to present evidence that he suffered from organic brain damage. Specifically, Prieto contends counsel should have presented evidence from a neurological evaluation, including a positron emission tomography (PET) scan, which would have proven that he suffers from frontal lobe dysfunction and temporal lobe damage, which renders him "incapable of appropriate reasoning, judgment, and impulse control."

The Court holds that this portion of claim (V) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that counsel did present evidence at Prieto's 2010 trial that Prieto suffered from organic brain damage. Counsel

18

presented testimony from Dr. James Grabarino that the results of the type of long-term trauma Prieto experienced as a child included poor brain development, and from clinical and forensic psychologist Dr. Mark Cunningham, who opined that Prieto's low IQ was an indicator of brain damage.

Moreover, counsel presented evidence of Prieto's PET scan during the sentencing phase of Prieto's 2008 trial. Although Prieto's expert, Dr. James Merikangan, testified that the scan showed Prieto suffered from organic brain damage, Dr. Merikangan's opinion was impeached by the report of Dr. Michael Kistler, the doctor who conducted the PET scan. Dr. Kistler opined that Prieto did not have organic brain damage and that his scan was "normal."

Counsel, having had the opportunity to present the PET scan evidence and to evaluate the strength of the Commonwealth's contrary evidence and the effect of the evidence on the jury, could reasonably have determined that presenting the same evidence at Prieto's second sentencing hearing would not be prudent. Such tactical decisions are an area of trial strategy left to the discretion of counsel and should not be second-guessed in a habeas corpus proceeding. See Strickland, 466 U.S. at 689-90. Thus, Prieto has failed to demonstrate that counsel's performance

19

was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (V), Prieto contends counsel was ineffective for failing to introduce anecdotal evidence to support his claim of brain damage. Specifically, Prieto contends counsel should have introduced evidence to show that as a youth Prieto was nervous and slow, stuttered, failed to follow instructions, did not like to bathe, and engaged in regressive behavior, including bed wetting, playing with toys that were not appropriate for his age and exhibiting fear of ghost stories, and that as an adult he was unnaturally focused.

The Court holds that this portion of claim (V) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the trial transcript, demonstrates that in addition to the expert testimony supporting Prieto's claim that he suffered brain damage, counsel presented anecdotal evidence at Prieto's 2010 trial that Prieto was slower and more reserved than other children, that he experienced nightmares as a child, and that he was scared of the violence he and his siblings had seen on a regular basis. Moreover, Prieto fails to explain in what manner

20

his childhood regressive behavior, dislike of bathing, stuttering and nervousness or his unnatural focus as an adult support his claim of organic brain damage to his frontal and temporal lobes.  Thus, Prieto has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (V), Prieto contends counsel was ineffective for failing to present evidence of the specific effects on Prieto of the chronic trauma he experienced and the ways in which such trauma influenced his actions as an adult.  Prieto contends counsel should have presented evidence showing the symptoms of Post-Traumatic Stress Disorder (PTSD) that he suffered as a child and as an adult.  Prieto contends that by presenting such evidence, counsel could have connected Prieto's symptoms to his actions in this case and that counsel's failure to do so left the jury with no option but to believe Prieto committed the crimes out of "malevolent choice."

The Court holds that this portion of claim (V) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  The

record, including the trial transcripts, demonstrates that counsel presented evidence at both Prieto's 2008 trial and at his 2010 trial that Prieto suffered from PTSD. At Prieto's 2008 trial, Dr. Pablo Stewart testified that Prieto suffered from the disorder, which he opined originated in El Salvador when Prieto was a child. Dr. Stewart described the symptoms of PTSD generally and explained how Prieto exhibited those symptoms both as a child and an adult. Dr. Stewart further testified Prieto's PTSD combined with his low IQ put "him at risk of untoward behaviors." Dr. Stewart conceded, however, that Prieto's PTSD could not explain his behavior in this case.

At Prieto's 2010 trial, counsel presented the testimony of Dr. Cunningham. Dr. Cunningham opined that Prieto did suffer from PTSD caused by his childhood exposure to "scenes of recurrent horror" during the El Salvadorian civil war. In addition, Dr. Cunningham suggested that Prieto suffered from a number of other deficits, including the results of chronic, long-term trauma, and opined that these deficits caused Prieto to lack self-control, inured him to violence, and prevented him from appreciating the pain he might inflict. Dr. Cummingham conceded Prieto's outward appearance might not show signs of PTSD but explained that his experience of

22

chronic trauma enabled him to present an outward appearance of being calm and comfortable with the past while his psyche remained disturbed by it.

Counsel, having had the opportunity to present evidence in Prieto's 2008 trial related to his PTSD, to evaluate Prieto's appearance at trial relative to the description of the effects of his PTSD, and to evaluate the effect of the evidence on the jury, could reasonably have determined that presenting the same evidence at Prieto's 2010 trial would not be effective.  Such tactical decisions are an area of trial strategy left to the discretion of counsel and should not be second-guessed in a habeas corpus proceeding.  See Strickland, 466 U.S. at 689-90.  Thus, Prieto has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

CLAIM (VII)

In claim (VII), Prieto contends he is mentally retarded and that his execution is therefore barred under Atkins v. Virginia, 536 U.S. 304, 321 (2002).

The Court holds that claim (VII) is barred because this non-jurisdictional issue could have been raised during the direct appeal process and, thus, is not cognizable in a

23

petition for a writ of habeas corpus.  Slayton v. Parrigan,
215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), cert. denied,
419 U.S. 1108 (1975).

                          CLAIM (VIII)

     In claim (VIII) and a portion of claim (V), Prieto
argues counsel was ineffective for failing to present
evidence at Prieto's 2010 trial that he is mentally
retarded.  Prieto contends counsel should have presented
evidence of his low performance on the Escala Wechsler de
Inteligencia Para Adultos III (EWIPA III) and of his
significant deficits in adaptive functioning.

     The Court holds that claim (VIII) and this portion of
claim (V) satisfy neither the "performance" nor the
"prejudice" prong of the two-part test enunciated in
Strickland.  The record, including the trial transcripts,
demonstrates that counsel presented evidence at Prieto's
2008 trial that Prieto is mentally retarded.  Dr. Ricardo
Weinstein testified that Prieto's full scale IQ score on
the EWIPA III was 66, that his true score was much lower,
taking into consideration the standard error of measurement
and the Flynn Effect,[1] and that Prieto had significant

_____

     [1] Dr. Weinstein and Dr. Leigh Hagan, who also testified
regarding Prieto's IQ, describe the Flynn Effect as the
gradual increase in the general population's average IQ

                              24

deficits in his adaptive functioning, including low academic achievement, poor social skills, and poor practical skills. Dr. Weinstein represented that the EWIPA III was a Spanish translation of the Wechsler Adult Intelligence Scale III (WAIS III), published in Mexico. Dr. Weinstein testified that he gave Prieto the EWIPA III instead of the WAIS III because Spanish was Prieto's primary language. Dr. Weinstein further testified he had scored Prieto's test against American norms, rather than the Mexican norms established for the EWIPA III, because the Mexican norms were unreliable. Dr. Weinstein conceded the instructions for the EWIPA III required that the American norms be used only if the test-taker's IQ seemed to have been underestimated when measured using the Mexican norms, and that Prieto's full scale IQ when measured using the Mexican norms was 75.

The Commonwealth presented evidence that Prieto was not mentally retarded, including evidence that Prieto achieved a full scale score on the WAIS III of 73, that the EWIPA III that was administered to Prieto was not an approved test, as required by Code § 19.2-264.3:1.1, that the EWIPA III was not scored in conformity to established

_____

scores over time, increasing at a rate of approximately .33 points per year in the United States.

practices, and that it is not acceptable professional practice to modify an individual's score by subtracting points to accommodate for the standard error of measurement or the Flynn Effect.

The Commonwealth further presented evidence that Prieto did not suffer from deficits in his adaptive functioning, including evidence that Prieto received consistently good grades in elementary school; that he was capable of handling money and opening and closing his own bank accounts, obtaining employment, operating heavy equipment, and obtaining drivers' licenses in two states; that he was fluent in Spanish and English; that he was capable of using the inmate grievance procedures; that he was interested in and understood current political and foreign policy issues; and that he had the ability to cultivate useful relationships. The Commonwealth further presented evidence suggesting the WAIS III, rather than the EWIPA III, was the appropriate tool for measuring Prieto's IQ, because at the time the tests were administered, Prieto had been in the United States for more than twenty-four years, over half of his life, spoke fluent English and was more fluent in English than in Spanish.

At Prieto's 2010 trial, counsel chose not to argue that Prieto was mentally retarded, instead focusing on his

limited intellect, the trauma he experienced as a child, the effects of that trauma, and residual doubt of Prieto's culpability in the minds of the jurors in an effort to mitigate the offenses.  Counsel, having had the opportunity to present evidence in Prieto's 2008 trial that Prieto is mentally retarded, to weigh the evidence that he is mentally retarded against the Commonwealth's contrary evidence, and to evaluate the effect of the evidence on the jury, could reasonably have determined that any attempt to re-litigate the issue at Prieto's 2010 trial would have been futile and determined it would be more effective to focus on evidence in mitigation of the crimes.  Such tactical decisions are an area of trial strategy left to the discretion of counsel and should not be second-guessed in a habeas corpus proceeding.  See Strickland, 466 U.S. at 689-90.  Further, under the circumstances, Prieto cannot meet the burden to show that the jury would have found that he is mentally retarded if the evidence was presented in the 2010 trial.  Thus, Prieto has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

CLAIM (IX)

27

In a portion of claim (IX), Prieto argues he was denied the effective assistance of counsel because counsel failed to investigate and present evidence "that would have cast doubt upon" his convictions in California for the rape and first-degree murder of Y. W., a fifteen year-old girl, two attempted murders, two additional rapes, three kidnappings, two robberies, two attempted robberies, and possession of a firearm by a felon. At the 2010 trial, the Commonwealth presented certified copies of Prieto's California convictions as well as his sentence of death for the first-degree murder conviction. The Commonwealth also presented testimony from one of the victims, Lisa Barajas, and from the lead investigator regarding the events that led to those convictions. At the time of Prieto's 2010 trial, counsel was aware of a pending petition for a writ of habeas corpus relating to the California convictions. Prieto argues counsel should have investigated the claims raised in that habeas petition to rebut the Commonwealth's evidence relating to the California convictions.

The Court holds that this portion of claim (IX) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. A collateral attack on a prior conviction from a court of competent jurisdiction is normally not allowed as that

28

conviction is given a presumption of regularity, "till the contrary appears." See Parke v. Raley, 506 U.S. 20, 29-30 (1992) (quoting Voorhees v. Jackson, 35 U.S. (10 Peters) 449, 472 (1836)). The claims Prieto contends counsel should have investigated and presented at his 2010 sentencing hearing did not call into question the presumption of regularity that attached to the California convictions and, as no ruling on the California petition has occurred, the "contrary [has not] appear[ed]" to rebut the presumption.

Counsel was not ineffective for failing to attempt a collateral attack on Prieto's California convictions. Thus, Prieto has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (IX), Prieto argues he was denied the effective assistance of counsel because counsel failed to investigate and present evidence that would have cast doubt on his role in the California crimes and thus would have diminished the weight of the evidence. Prieto argues counsel should have investigated and presented evidence of Barajas' initial statement to the police that she could not identify the assailants as she was

29

blindfolded during the incident as well as evidence of Barajas' alleged exposure to suggestive identification procedures. Prieto contends that had this information been presented at his 2010 trial it would have affected the jury's assessment that Prieto was a future danger to society.

The Court holds that this portion of claim (IX) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including Prieto's 1991 California trial transcript, demonstrates that Barajas was questioned extensively regarding her identification of Prieto. Barajas admitted to initially lying about being blindfolded and explained she did so out of fear of retaliation by her assailants. Barajas also explained how she identified Prieto from a photographic line-up prior to seeing his photograph in the newspaper and again identified Prieto in a live line-up after his photograph was published. Throughout the trial, Barajas was adamant in her identification of Prieto.

Counsel could have reasonably determined that attempting a similar attack on Barajas' identification of Prieto at his 2010 trial would have been unsuccessful. Prieto has also failed to show in what way the

30

identification procedures were suggestive.  Moreover, extensive cross-examination of Barajas on this point had the potential to highlight the aggravated nature of these crimes and Prieto's continuing failure to take responsibility for his actions.  Counsel is not ineffective for failing to present evidence that has the potential of being "double-edged."  Lewis v. Warden, 274 Va. 93, 116, 645 S.E.2d 492, 505 (2007).  Such tactical decisions are an area of trial strategy left to the discretion of counsel and should not be second-guessed in a habeas corpus proceeding.  See Strickland, 466 U.S. at 689-90.  Thus, Prieto has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (IX), Prieto argues he was denied the effective assistance of counsel because counsel failed to investigate and present evidence that would have cast doubt on his role in the California crimes and thus would have diminished the weight of the evidence.  Prieto argues counsel should have investigated the lack of an expert to rebut California's theory for the absence of seminal fluid on Y. W.  Prieto contends that had this information been presented at his 2010 trial it would have

31

affected the jury's assessment that Prieto was a future danger to society.

The Court holds that this portion of claim (IX) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Prieto has failed to proffer the name or testimony of an expert regarding the seminal fluid. Muhammad, 274 Va. at 19, 646 S.E.2d at 195. Thus, Prieto has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (IX), Prieto argues he was denied the effective assistance of counsel because counsel failed to investigate and present evidence that would have cast doubt on his role in the California crimes and thus would have diminished the weight of the evidence. Prieto argues counsel should have investigated Prieto's trauma disorder and his use of drugs at the time of the California crimes. Prieto contends that had this information been presented at his 2010 trial it would have affected the jury's assessment that Prieto was a future danger to society.

The Court holds that this portion of claim (IX) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the 2010 trial transcript, demonstrates that counsel did present evidence of Prieto's trauma disorder and drug use around the time of the California crimes. Counsel presented evidence that Prieto suffered from PTSD caused by his childhood exposure to "scenes of recurrent horror" during the El Salvadorian civil war. In addition, counsel presented evidence that Prieto suffered from a number of other deficits, including the results of chronic, long-term trauma. Counsel further presented evidence that Prieto began using drugs extensively in high school, that he was using drugs in 1990, and that his drug use was one of the factors that "created a significant emotional disturbance in" Prieto and thus precipitated his violent crimes.

Prieto fails to allege what additional evidence counsel could have presented that would have rebutted the aggravating circumstances of his California offenses. Thus, Prieto has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

33

In another portion of claim (IX), Prieto argues he was denied the effective assistance of counsel because counsel failed to investigate and present evidence that would have cast doubt on his role in the California crimes and thus would have diminished the weight of the evidence. Prieto argues counsel should have investigated an erroneous jury instruction that allowed the California jurors to infer Prieto's guilt from his possession of Barajas' stolen car keys.

The Court holds that this portion of claim (IX) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. In People v. Prieto, 66 P.3d 1123, 1137-38 (Cal. 2003), the Supreme Court of California determined that the jury was erroneously instructed that Prieto's possession of the car keys was a circumstance they could consider in determining his guilt without limiting the instruction to the theft related crimes. However, the Court found the error harmless. Id. at 1138.

Prieto fails to state how presenting evidence at his 2010 trial of the erroneous jury instruction would have mitigated the aggravating circumstances of his California offenses. Thus, Prieto has failed to demonstrate that counsel's performance was deficient or that there is a

34

reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

In another portion of claim (IX), Prieto argues he was denied the effective assistance of counsel because counsel failed to rebut the Commonwealth's evidence regarding Prieto's other prior convictions.

The Court holds that this portion of claim (IX) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Prieto fails to proffer what evidence counsel should have presented to rebut the Commonwealth's evidence as to his other prior convictions. Thus, Prieto has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

CLAIM (X)

In claim (X), Prieto argues he was denied the effective assistance of counsel because counsel failed to object to evidence of his California convictions and death sentence. At the 2010 trial, the Commonwealth introduced certified copies of Prieto's California convictions and death sentence to show he was a future danger to society.

35

Prieto argues that, prior to the start of the hearing, counsel should have objected to the introduction of this evidence as Prieto was challenging his California convictions and sentence in a petition for a writ of habeas corpus.  In support of this claim, Prieto cites Johnson v. Mississippi, 486 U.S. 578 (1988) (death sentence vacated as it had been predicated, in part, on a New York conviction which was later reversed).  Prieto opines that had counsel objected, there is a reasonable probability that the evidence relating to his California convictions and death sentence would not have been presented.

The Court holds that claim (X) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  Counsel had no reason to object to the introduction of the evidence relating to Prieto's convictions and sentence in California as this Court had previously upheld the introduction of such evidence.  Prieto v. Commonwealth, 278 Va. at 413-15, 682 S.E.2d at 936.  Prieto's reliance on Johnson is misplaced and would not have supported the objection Prieto contends counsel should have raised.  In Johnson, the New York conviction was reversed while Johnson's motion for post-conviction relief from his Mississippi death sentence was pending.  486 U.S. at 583.  The United States Supreme Court

found that Mississippi erred when it refused to consider that fact. Id. at 587-90. Prieto's California convictions and death sentence had not been overturned, thus there was no basis for counsel to object to their introduction.[2] Thus, Prieto has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

CLAIM (XI)

In claim (XI), Prieto contends that the cumulative effect of counsel's deficient performance at the 2010 trial undermines confidence in the jurors' decision.

The Court holds that claim (XI) is without merit. As addressed previously, Prieto has failed to demonstrate prejudice as a result of counsel's alleged errors. "Having rejected each of petitioner's individual claims, there is no support for the proposition that such actions when considered collectively have deprived petitioner of his constitutional right to effective assistance of counsel." Lenz, 267 Va. at 340, 593 S.E.2d at 305.

CLAIM (VI)

---

[2] As of the date of this order, Prieto's habeas petition is still pending in the California Supreme Court.

37

In claim (VI), Prieto contends counsel was ineffective for failing to present mitigating evidence, as alleged in claims (I), (V), (VII), and (VIII). Prieto argues that as a result of counsel's cumulative errors in failing to present this evidence, counsel was unable to persuade the jury that Prieto was not the sole perpetrator or that his multiple deficiencies diminished his moral culpability. The Court holds that claim (VI) is without merit. Prieto's argument is one of cumulative error. "Having rejected each of petitioner's individual claims, there is no support for the proposition that such actions when considered collectively have deprived petitioner of his constitutional right to effective assistance of counsel." Lenz, 267 Va. at 340, 593 S.E.2d at 305.

Upon consideration whereof, Prieto's motions for access to files from the Virginia Department of Forensic Science, for the appointment of a DNA expert, to hold his Virginia habeas corpus proceedings in abeyance pending resolution of the California habeas corpus proceedings, and for an evidentiary hearing are denied.

Upon consideration of the respondent's motion to strike Prieto's rebuttal affidavits, the motion to strike is denied. The rebuttal affidavits are considered pursuant to the appropriate evidentiary rules.

Accordingly, the petition is dismissed and the respondent shall recover from petitioner the costs expended in his defense herein.

This order shall be published in the Virginia Reports.

Respondent's costs:

Attorney's fee          $50.00


                    A Copy,

                        Teste:


                            Patricia L. Harrington, Clerk